Insurance Co. v. Gasche.

No. 19,263.

THE ALLIANCE COÖPERATIVE INSURANCE COMPANY et al., *Plaintiffs*, v. W. B. GASCHE et al., *Defendants*.

SYLLABUS BY THE COURT.

1. CORPORATION—*Removal of Directors—Notice of Hearing Required.* A director of a corporation can not be removed because of his failure to take the oath of office after a reelection, or because of his neglect to attend to his duties, without notice and opportunity to be heard.

2. CORPORATE MEETINGS—*Refusal of President to Put Motions —No Ground for His Removal.* Where at a corporation meeting a motion is made to take action which as a matter of law is beyond the power of the body, and the president declines to put it on that account, his refusal to entertain an appeal from his ruling is not just ground for removing him and substituting another presiding officer.

3. SAME—*Failure to Elect Directors for Ensuing Year.* Upon the facts of the case, held that the separation of the members at the annual meeting of a corporation resulted in a failure to elect directors for the ensuing year.

Original proceeding in quo warranto. Opinion filed October 10, 1914. Judgment for the defendants.

*W. O. Worswick*, of Oskaloosa, *Joseph G. Waters*, and *John C. Waters*, both of Topeka, for the plaintiffs.

*S. H. Allen, Otis S. Allen, Robert Stone*, and *George T. McDermott*, all of Topeka, for the defendants.

The opinion of the court was delivered by

MASON, J.: This is an action brought by persons claiming to be duly elected directors and officers of a mutual insurance company organized under the laws of Kansas, against other persons who are acting in that capacity, the purpose being to determine which of the two sets of claimants is legally entitled to the offices in dispute.

At the annual meeting of the members of the company, held January 13, 1914, a controversy arose as a

result of which the body divided into two parts, each of which thereafter undertook to elect five directors to succeed five whose terms had expired. The meeting participated in by the faction to which the plaintiffs belong also voted to declare vacant the offices of three other directors, "for refusal to do their duty," and undertook to elect three others in their places. On January 14 two meetings were held, each claiming to be that of the board of directors, and each undertook to elect a president, vice president, secretary and treasurer. The meeting relied upon by the defendants was attended by six hold-over directors (one being the president), and the five persons whom the defendants claim had just been elected directors—four of them to succeed themselves. The meeting relied upon by the plaintiffs was attended by one hold-over director, by the five persons whom the plaintiffs claim had just been elected for full terms, and by the three persons whom the plaintiffs claim had been elected to fill the vacancies declared by the vote of the annual meeting. A contention is made by the plaintiffs that the hold-over directors who are coöperating with the defendants are to be regarded as participating in this meeting because they were in the room where it was held and were given an opportunity to take part. We can not accept this view. These directors were parts of the rival organization, and their physical presence can not help to give validity to the one relied upon by the plaintiffs. We also conclude that the attempted election of three directors in the place of those named in the order declaring a vacancy was a nullity. A director of a corporation can not be removed, in the absence of a specific provision covering the matter, without notice and an opportunity to be heard. (10 Cyc. 745; 2 A. & E. Encycl. of L. 314; *Toledo Traction, Light & Power Co. v. Smith*, 205 Fed. 643.) No effort was made to give a notice in this case. The plaintiffs, however, contend that the action of the annual meeting was not an at-

tempted removal of three directors, but the declaration of an existing fact that the persons referred to were not directors because they had never accepted their election as such. Two of them, who had served several previous terms as directors, had failed to take the oath of office after their last election. This omission did not operate to create a vacancy. (*The State, ex rel., v. Stewart,* 90 Kan. 778, 135 Pac. 1182.) The three directors were absent from the state and had failed to attend some of the meetings, but upon the whole record we think it can not be said that the conduct of any one of them can be regarded as a refusal to accept the office. The record made of the action of the meeting stated that a motion was carried to declare their offices "vacated for refusal to do their duty."

The persons whom the plaintiffs regard as having been elected president, vice president, secretary and treasurer were therefore chosen by a gathering of not more than six directors, out of a total of fifteen. Those who are now acting were chosen by a gathering of at least six directors, including the president, attended by the secretary, and moreover were already occupants of the several offices. It results from these views that the action must fail so far as it relates to the offices named.

The conflict between the claims of the two rival sets of five directors, each claiming to have been elected at the annual meeting to succeed those whose terms had expired, is more difficult of solution. The plaintiffs' faction, which obviously sought to effect a change in the administration of the company, had the greater voting strength, according to a roll that was made up at the members' meeting. The defendants maintain that in fact this roll was erroneous, and that the voting strength lay with their faction. This need not be determined, but we shall assume that the contention is not sustained. The defendants also suggest that a majority of all the members was necessary to do business at the annual meeting. The number of members being indefi-

nite and changing this rule does not apply.    (10 Cyc.
329.)    The antiadministration faction was therefore in
a position to elect a majority of the five directors whose
terms had expired.    But to gain control of the board
of directors much more than this was necessary.    In
the plaintiffs' abstract it is said:

"There were three directors, Shirk, Tabor and Troud-
ner, that the Harman faction desired to oust of the old
directors and five new ones which the Harman faction
desired elected, giving such faction 9 of the 15 directors,
if successful, and which included Harman, an old di-
rector."

In apparent pursuance of this purpose a motion was
made (as a substitute for another motion) that the di-
rectors be elected singly.    The president, W. B. Gasche,
declared the motion out of order and refused to put it.
The maker called for an appeal but the president re-
fused to entertain it.    Later a motion was made to de-
clare the places of Shirk, Tabor and Troudner vacant,
inasmuch as they had moved out of the state and were
not performing their duties as directors.    The president
refused to put this motion, and refused to entertain an
appeal from his ruling.    An antiadministration member
then made a motion, which he stated, and upon a vote
declared carried, that the president be expelled from
the chair, and that C. B. Harman be elected chairman
*pro tem.*    Harman then undertook to act as chairman,
and there was some controversy as to the possession of
the gavel.    An administration member moved an ad-
journment until the next day.    Gasche called for the
affirmative vote and declared the motion carried.    He
says that his recollection is that he also called for the
negative vote, but this is denied.    Harman says that
he himself called for the negative and that a majority
voted that way.    The Gasche adherents then withdrew,
those of Harman remaining and undertaking to elect
eight directors, as already stated.    The Gasche faction
reassembled the next day and undertook to complete
the business of the meeting.    There is considerable

conflict in the evidence regarding the details of the proceedings, but the material matters can perhaps be decided upon the uncontroverted facts.  We think the president was clearly right in refusing to put the motion to vote upon the directors singly and the motion to declare the offices of the three absent directors vacant. The statute and the by-laws of the company alike guarantee the members the right to distribute their votes among the whole number of directors to be elected, or to concentrate them upon a less number.  The matter of ousting the three directors has already been discussed. The rulings of the president were not upon mere questions of parliamentary practice—of procedure.  They went to the matter of legal power.  The meeting could not by a mere motion remove a director.  Nor could it elect directors otherwise than by the method of cumulative voting.  We can not regard the failure of the president to entertain an appeal on these matters as justifying the selection of another presiding officer.

On the other hand, the validity of the further action of the Gasche adherents on the next day is questionable. It is difficult to determine precisely what took place just prior to the separation.  Each side was striving to maintain its position and gain control.  The meeting had the power to adjourn to another day.  (10 Cyc. 322.)  We are not clear that there was a valid exercise of that power—at least in such a way that all the members knew or should have known what had taken place. The division of the meeting, brought about in part by differences of opinion, prevented the ascertaining and carrying out of the will of those entitled to participate in the election of directors.  We think that the law justifies regarding the meeting as having been dissolved without effective action, and that the ends of justice will be thereby best promoted.  We therefore decide that there was no election of directors at the annual meeting in 1914; that all the defendants are *de facto* officers— the president, vice president, secretary and treasurer,

and the directors who held over from a prior term, being *de jure* as well; and that none of them can be removed in this action. Judgment is accordingly rendered in their favor.