G. W. Chapman, R. W. Litzsinger and Walter Deem, Plaintiff-Appellees, v. C. T. Barton, Ira J. Jones, Emily K. Jones, Jewell Mathews and Pur-Gas, Inc., Defendants-Appellants.

Term No. 51–O–20.

■■■■■■■■■■■■■■■■■

Opinion filed November 24, 1951.
Rehearing denied December 27, 1951. Released for publication December 27, 1951.

GORDON BURROUGHS, BURROUGHS, SIMPSON & BUR-
ROUGHS, of Edwardsville, and RAEMER & HORN, of
Salem, for appellants; GORDON BURROUGHS, of Ed-
wardsville, C. M. RAEMER, and RAYMOND O. HORN, both
of Salem, of counsel.

SAUL E. COHN, of East St. Louis, for appellees.

MR. JUSTICE SCHEINEMAN delivered the opinion of the
court.

The plaintiffs, G. W. Chapman, R. W. Litzsinger and
Walter Deem, are the owners of 109 of a total of 200
shares of the capital stock of defendant, Pur-Gas, Inc.,
a corporation. The defendants, C. T. Barton, Ira J.
Jones, Emily K. Jones and Jewell Mathews, own the
remaining 91 shares of said stock.

The complaint alleged that defendants, C. T. Barton
and Ira J. Jones, were wrongfully and illegally at-
tempting to act as officers and directors of the corpo-
rate defendant, as part of a conspiracy of the minority
stockholders to seize control and management of the
company. There were other allegations bearing on the
subject, and the prayer was for a temporary and per-
manent injunction to restrain the conspiracy, and to
enjoin Barton and Jones from acting and purporting
to act as officers and directors of the corporation.

The defendants answered, denying some of the mate-
rial allegations of the complaint, and adding affirma-
tive statements which, in substance, allege a state of
facts as a basis for the claim of Barton and Jones that
they are the proper officers and directors of the com-
pany; also that they have discharged the former man-
ager of the company, and other employees, and have
made defendant Barton the general manager of the
company, and the business is being competently man-
aged.

There was a preliminary hearing on application for
a temporary injunction. The court directed defendants

to post a performance bond of $10,000, which was done, and no injunction was issued at that time. Thereafter, the case was heard on the merits, and a decree was entered which found the facts against the defendants, and granted an injunction as prayed. This appeal followed.

Most of the argument before this court has to do with the evidence, consisting of testimony of five stockholders and a Mr. Bax, all of whom were present at the regular annual meeting of the stockholders. There are also two drafts of so-called "Corporate Minutes," one from each faction. Appellants also contend that the only question litigated was the right of Barton and Jones to the offices they claimed, which could be determined in quo warranto, and this constituted an adequate remedy at law, so that the decree should be reversed for lack of jurisdiction in equity.

The evidence discloses that the regular annual meeting of the stockholders was held in January, 1951, with all stock represented in person or by proxy. The minority stockholders brought with them Mr. Bax, an employee of the company but not a stockholder. They requested that Bax be permitted to take notes and serve as recording secretary of the meeting, which was done without objection. Deem was then president and Chapman secretary of the corporation. After the meeting, both Bax and Chapman prepared statements to serve as the official minutes, though it does not appear that either statement has been officially approved and made the recorded minutes. The statements differ principally as to the sequence of events at the meeting, but there are no startling discrepancies.

██ Aside from any question of the official status of these "minutes," it is obvious that, in this contest, they amount to nothing more than self-serving statements, made out of court by interested parties. As such, they cannot be accorded weight for either side, against the testimony of the witnesses sworn and exam-

ined and cross-examined in court. This is not a case of proving prima facie the official acts of the corporation, as such, but a contest between the stockholders who were present at the meeting, as to what took place, and no one of them can foreclose the inquiry by his own written statement.

From the testimony of witnesses, it appears that it had been the custom in prior years to conduct the annual stockholders meeting in an informal manner, and for six years directors had been selected or retained annually by oral vote or agreement. On this occasion the majority interests moved, in the only motion made at the meeting, to retain the existing board members, expecting a voice vote, as usual. Barton, however, demanded a vote by ballot. Deem became suspicious and asked what was there to conceal? Barton said the by-laws required balloting for directors. Deem said he was not familiar with the by-laws, and that he would secure legal advice, as Barton evidently had done. The evidence shows that Barton had no official status at the meeting, there were no other motions, and no action directed by the chair, but Barton took it upon himself to distribute slips of paper. The minority group made out ballots and gave them to Bax. There is some dispute as to what was done with them thereafter. No ballots were taken up from the other stockholders. The minority's votes were for Barton and Jones. The evidence clearly indicates that the chair was refusing to conduct such an election without legal advice. The chair announced the meeting was adjourned until a lawyer could be consulted. Jones, one one of the minority group, requested that the adjourned meeting be put off for about 30 days, as he had business elsewhere. Nobody claimed, at that time, that an election had been held. The weight of the evidence is that it was understood by all there would be another meeting for election of directors, and that no one objected.

██ The principal dispute concerns the sequence of events. No witness denies that the president did adjourn the meeting, and refused to proceed with an election by ballot at that time. It is merely disputed whether the minority had made out their ballots and given them to Bax before or after the adjournment order. In our view of the case, the time element is unimportant. There is no legal basis whereby a fraction of a meeting may ignore the duly elected chairman and the rest of those in attendance conduct some private maneuvers of their own, and then assert that their actions constitute the official acts of the meeting. The chancellor correctly ruled that there was no election of directors at this annual meeting.

██ Appellants contend it was illegal to adjourn the meeting without electing directors at that time, citing *West Side Hospital of Chicago v. Steele,* 124 Ill. App. 534. That case involved a company with nine directors in overlapping terms. Three were to be elected at the annual meeting, and the minority group present would be able, by cumulating votes, to elect one director, but that one would give them control, because of the make-up of the continuing directorate. The majority group voted an adjournment without electing directors, and then called a meeting of the old board, on the theory they carried over in the absence of an election, and elected officers from their faction. The court held this was a fraud on the minority, and granted equitable relief, but the court specifically recognized that the meeting could legally be adjourned for legitimate reasons. The illegality arose because the adjournment was for the deliberate purpose of depriving the minority of its rights.

The situation before us is entirely different. Here no attempt is being made to deprive the minority of its rights. In fact, the motion made by the majority group, if carried, would have continued a board made up of two from the majority group and one from the minor-

ity, which is all they could have obtained by cumulative balloting. And no claim has been made that there was not to be another meeting. On the contrary, in this case it is the minority group which is seeking to maintain control of the company, which they could not do by lawful election of directors, and they are the ones who have held an illegal meeting, elected themselves officers, fired the manager, and hired one of themselves as manager. The case of *Chicago. Macaroni Mfg. Co. v. Boggiano*, 202 Ill. 312, is also distinguishable on the facts.

■ A case more like this is *Western Cottage Piano and Organ Co. v. Burrows*, 144 Ill. App. 350. There, as here, a dispute arose in the annual meeting over the method of voting, and, as here, the meeting was adjourned so the president could secure legal advice. All parties left the meeting place without further protest, as here. After the majority group had departed, the minority returned to the room and conducted an election of directors. Due to the wrong method of voting, the court was obliged to hold that the adjournment was illegal, but it declined to uphold the action of the minority group, by ruling that the departure of all from the meeting ratified the adjournment. It is apparent that courts of equity do not look with favor upon attempts of a minority group to seize control of a corporation by trying to trap the majority without legal advice. For similar results, see *Alliance Co-op. Ins. Co. v. Gasche*, 93 Kan. 147, 142 Pac. 882; *Haskell v. Read*, 68 Neb. 107, 93 N. W. 997.

■■ Appellants cite cases in support of their legal point, that equity will not take jurisdiction merely to try title to an office, since that may be done by quo warranto. It is not shown in the cases cited how the question arose. We therefore call attention to the general rule that, if the case is of a type recognized in

equity, which this is, being for an injunction, a defendant is not permitted to go through a hearing on the merits and then for the first time urge that there is an adequate remedy at law. He must make that objection specifically, either by motion or answer, before the hearing. *Law v. Ware,* 238 Ill. 360, 363; *McIntyre v. McIntyre,* 287 Ill. 544; *Leonard v. Bye,* 361 Ill. 185, 191. These defendants did not, by motion or answer, assert there was an· adequate remedy at law. Instead, they merely asserted the complaint lacked equity, and set up their own claims to office, for an adjudication, as a basis to deny relief to plaintiffs.

■ Moreover, this case properly belongs in equity for another reason. This is not merely a suit to try title to an office, but, also, to restrain unauthorized persons from interfering with the management. The defendants have actually taken physical possession of the company property and proceeded to hire and fire employees and otherwise conduct the business without lawful right. In a similar situation, the Supreme Court has held that it is proper for equity to determine who are the officers of a corporation and upon a finding in favor of the plaintiffs, that the plaintiffs are "entitled to maintain a bill to restrain the defendants to it from acting or attempting to act as directors or from interfering with the persons elected acting as directors." *Hall v. Woods,* 325 Ill. 114.

The allowance of the injunction was proper and the decree is affirmed.

*Decree affirmed.*

CULBERTSON, P. J. and BARDENS, J., concur.