RAY HILD *et al.*, Plaintiffs-Appellees, *v.* AVLAND DEVELOPMENT COMPANY, Defendant-Appellant.

Third District   No. 76-38

Opinion filed February 24, 1977.

174

David B. Mueller, of Cassidy, Cassidy & Mueller, of Peoria, for appellant.

Harold H. Kuhfuss, of Pekin, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a decree of the Circuit Court of Tazewell County which entered judgment in favor of the plaintiffs, Ray Hild and Edward Tyrrell, and against the defendant, Avland Development Company, for damages in the sum of $4,427.12 and for other mandatory relief.

The factual situation which ultimately resulted in litigation between the plaintiffs and the defendant and which led to this appeal is as follows.

In 1959 Ben Knapp owned more than 300 acres of farm and pasture land near the city of Mackinaw in Tazewell County, Illinois. Plaintiff Ray Hild owned a 200-acre farm adjoining the land of Ben Knapp on the North, and plaintiff Edward Tyrrell owned a farm adjoining the land of Ben Knapp to the West.

During 1967-68 Ben Knapp received a permit to build a dam on his property from the Department of Waterways. The dam was constructed and an 80-acre lake was formed. On November 20, 1969, Ben Knapp and his wife conveyed the lake and surrounding acreage to the Avland Development Company which used the land for the sale of recreational homesites.

The lands upon which the lake was formed were of such nature that they allowed seepage onto the lands of Hild and Tyrrell. In July 1969 Tyrrell noticed seepage. Sometime during the fall of 1969 Tyrrell discussed this with Knapp, who unsuccessfully attempted to obtain an easement on the Tyrrell land. During the spring of 1969 Hild observed water seeping from the lower end of an eight-acre parcel and running in a stream from there. In an attempt to halt or reduce this seepage or percolation Hild attempted unsuccessfully to pump out the water which covered the eight-acre tract. He then installed a culvert through which

water was still running during the period of July 18, 1973, and September 1, 1973. Avland attempted to reduce the seepage or percolation by applying Bentonite to the north shore of the lake. This sealant reduced the seepage to one-fourth of its volume. Estimates for the cost of correcting the seepage are approximately $250,000.

Avland paid Knapp and his wife $650,000 for the property upon which the lake was located. Knapp and Avland entered into an agreement dated November 24, 1969, which recognized that there was leakage and provided for indemnification to Avland and for damage caused to the surrounding property by the leakage. Between November 1969 and April 2, 1971, when suit was filed, Avland developed the property as recreational lots at a cost in excess of $646,000. Two hundred and four lots were sold and a homeowners association formed.

On January 21, 1975, Avland's attorney withdrew its appearance and substitute counsel entered its appearance. Avland asked leave, which was denied, to file a counterclaim against Knapp. Avland then filed a motion for judgment on the pleadings, which was denied. Following the testimony of Hild and Tyrrell, Avland sought to amend its answer to include the defense of laches. This was also denied.

At the time of trial other litigation was pending against Knapp in which Avland was seeking indemnification for costs and expenses in correcting the seepage and protection against the future claims of adjoining property owners. A motion in limine was filed to prevent defendant's use of an affidavit from that lawsuit as an admission. This was denied.

After a trial on the merits the court found that Ben Knapp had constructed a dam whereby a large lake was created and that the accumulation of water in the lake caused waters from the lake to percolate onto the lands of Ray Hild and Edward Tyrrell. The court also found that the lands on which the lake was formed were of such a nature as to permit percolation of water from the lake onto the lands of Hild and Tyrrell. The court further found that Hild and Tyrrell suffered damage to their crops and incurred expenses in attempting to rid their lands of the percolated waters.

As a result of these findings the trial court awarded money damages to Hild and Tyrrell, and also enjoined Avland Development Company, as owner and possessor of the dam and lake, from permitting water from the lake to percolate onto the lands of Hild and Tyrrell. Avland Development Company was directed to stop the percolation by September 12, 1976, by either sealing the area of the lake through which the percolation was occurring or by lowering the level of the lake below the area through which the percolation could occur or by draining the lake and returning the area to its original condition of drainage or by other means available to Avland Development Company.

The first point raised on appeal is that the complaint fails to state a cause of action against the defendant, Avland Development Company—first, because no facts were alleged or proved to establish an actionable nontrespassory invasion of either plaintiff's land and, second, because the plaintiffs had an adequate remedy at law. The record presented upon appeal contains no challenge to the sufficiency of the complaint prior to the motion for judgment on the pleadings filed March 13, 1965, nearly four years after the complaint was filed and 3½ years after the answer was filed. At trial the plaintiffs presented their evidence. Then, in a motion for judgment at the close of plaintiffs' evidence, the defendant again challenged the sufficiency of the complaint. This challenge was repeated at the close of all evidence and in the post-trial motion. The last three challenges consisted merely of the statement that the complaint failed to state a cause of action.

■■ Section 45(1) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 45(1)) clearly states:

> "All objections to pleadings shall be raised by motion * * * [which] * * * shall point out specifically the defects complained of * * *."

The purpose of this section is to give the complainant an opportunity to respond to the objection and to cure the defect in the trial court. If the motion does not point out specifically the objections complained of the objections are not preserved for review. *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550.

■■■ In suggesting that plaintiffs had an adequate remedy at law defendant attempted to challenge the sufficiency of the pleadings by use of a motion for judgment on the pleadings rather than by a motion to dismiss pursuant to section 45 of the Civil Practice Act. The Illinois rule has long been that if a defendant answers the complaint and does not plead, either in the answer or by motion filed prior to the answer, that the plaintiff has an adequate remedy at law, the defendant submits himself to the jurisdiction of a court of equity unless that court is without jurisdiction over the subject matter of the lawsuit. (*McIntyre v. McIntyre* (1919), 287 Ill. 544, 122 N.E. 824; *Buchli v. Caldwell* (1932), 267 Ill. App. 38.) Once a defendant has submitted his person to the jurisdiction of a court with jurisdiction over the subject matter of the lawsuit he may not withdraw. Therefore we shall not inquire into the sufficiency of the pleadings.

It is further argued by defendant that before he can be held liable and a recovery for "non-trespassory invasions of real estate" can be had the following must be proved:

> "(a) [T]he other [here Hild & Tyrrell] has property rights and privileges in respect to the use or enjoyment interfered with; and
> (b) the invasion is substantial; and

(c) the actor's [here, Avland] conduct is a legal cause of the invasion; and

(d) the invasion is either

(i) intentional and unreasonable; or

(ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultrahazardous conduct."

See Restatement of Torts §§ 822-840, at 214-312 (1939).

Defendant Avland argues that since Knapp and not Avland built the dam, Avland's conduct cannot be considered intentional; therefore section 366 of the Restatement (Second) of Torts (1965) applies. That section states:

"One who takes possession of land upon which there is an existing structure or other artificial condition unreasonably dangerous to persons or property outside of the land is subject to liability for physical harm caused to them by the condition after, but only after,

(a) the possessor knows or should know of the condition, and

(b) he knows or should know that it exists without the consent of those affected by it, and

(c) he has failed, after a reasonable opportunity, to make it safe or otherwise to protect such persons against it."

We have reviewed the cases cited by defendant in support of its argument that it was entitled to notice of the existence of the invasion and plaintiffs' objection to the invasion before suit was filed. We find that those cases in determining the factual situations presented therein state the law in Illinois as we understand it; however, those cases do not decide the same factual situation as presented here.

■■ In the instant case, the evidence shows that on November 24, 1969, an agreement was entered into by and between Ben and Elsie Knapp and Avland Development Company. This agreement recited that:

" * * * [T]he engineering firm of McIntire and Quiros of Monterey Park, California, has advised that the lake, located on said real estate is presently leaking * * * but it is unknown at this time * * * whether such leak or leaks will damage adjoining property."

The agreement then recites that " * * * as an inducement to Avland to close the sale and purchase of said real estate in spite of the leak or leaks existing in the lake" Ben and Elsie Knapp will indemnify Avland for any action for damage to surrounding property. In addition, the report of Dr. Herbert O. Ireland, professor of engineering at the University of Illinois,

who was employed by the Knapps and Avland, showed that in 1969 the engineers for Avland were aware of the leakage and damage to surrounding property. Ireland observed that water emerged from the ground on the properites owned by Hild and Tyrrell. Further, it appears that early in the fall of 1969 Tyrrell discussed the seepage problem with Knapp, who was in privity of contract with Avland. We believe that these facts show defendant had sufficient notice of the invasion and plaintiffs' refusal to consent thereto. We will not, in this particular factual situation, agree with the contention that further notice should have been given to Avland.

■■ We note further that it has often been stated that equity does not require that a complainant show that no remedy at law exists, simply that no adequate remedy exists. The small amount of money damages and the difficulty in determining those damages, as well as the continuing nature of the damage to plaintiffs' property, are indications that no adequate remedy exists. *Fink v. Board of Trustees* (1966), 71 Ill. App. 2d 276, 218 N.E.2d 240; *McIntyre v. McIntyre* (1919), 287 Ill. 544, 122 N.E. 824; *Shontz v. Metzger* (1911), 186 Ill. App. 436.

■■ The second point raised is that a comparison of the respective equities establishes that the plaintiffs are not entitled to mandatory injunctive relief. We believe that the present state of the law permits the trial court to "balance the equities" in an appropriate case. (*Smith v. City of Woodstock* (1974), 17 Ill. App. 3d 948, 309 N.E.2d 45.) We do not find, however, that this is an appropriate case. Here, on November 24, 1969, Avland had reason to know that the lake was leaking. Despite this knowledge and knowledge that damage to surrounding property could ensue and that some damage did occur, and was protested by plaintiff Tyrrell, Avland sold the recreational lots on the surrounding acreage. Avland had then and has now no power of eminent domain. Avland is not a municipality; it is a private citizen, as are Hild and Tyrrell.

The injury done to Hild and Tyrrell is a continuing one. While it is possible that the injury may abate at some time in the future, there is no assurance that this will happen. There is some disagreement as to the adequacy of the monetary damages allowed in the trial court. As we stated above, the small amount of money damages and the difficulty in determining those damages, as well as the continuing nature of the damage to plaintiffs' property are indications that equity has jurisdiction over the subject matter and may grant a mandatory injunction. *Winhold v. Finch* (1919), 286 Ill. 614, 122 N.E.53.

■■ We do not doubt that defendant will suffer a financial burden resulting from the issuance of the mandatory injunction. However, that burden is not a sufficient reason for us to allow defendant to infringe upon

plaintiffs' rights and to allow defendant to take plaintiffs' property without due process of law. *Barrington Hills Country Club v. Village of Barrington* (1934), 357 Ill. 11; *Deterding v. Central Illinois Public Service Co.* (1923), 231 Ill. App. 542; *Shontz v. Metzger* (1911), 186 Ill. App. 436.

The third point raised by defendant is that the claims of the plaintiffs are barred by laches. The Illinois rule in regard to laches is:

> "In an equitable proceeding it is only when by delay or neglect to assert a right the adverse party is lulled into doing that which he would not have done or into omitting to do that which he would have done in reference to the property had the right been properly asserted that the defense of *laches* will be considered." (*Rogers v. Barton* (1944), 386 Ill. 244, 253, 53 N.E.2d 862.)

The failure to assert a right combined with the lapse of time and prejudice to the defendant give rise to the defense of laches. The defense does not apply if there is no delay with prejudice. *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 174 N.E.2d 341.

Whether the defense of laches is available depends upon the facts and circumstances of each case. *Ryan v. City of Chicago* (1974), 25 Ill. App. 3d 333, 323 N.E.2d 117; *Anundson v. City of Chicago* (1973), 15 Ill. App. 3d 1032, 305 N.E.2d 376.

There is no definite rule which can be applied in every case. *People ex rel. Fleming v. Conlisk* (1973), 11 Ill. App. 3d 520, 299 N.E.2d 537.

■■ In the instant case the record indicates no agreement by either Hild or Tyrrell, before the construction of the dam, that they acquiesced in the construction and subsequent percolation. Rather the record indicates lack of knowledge on the part of Hild and Tyrrell that such percolation would ensue. The record discloses that Knapp was warned that such percolation might ensue, and that Avland, after construction, had knowledge that such percolation did in fact ensue. The record also indicates that Knapp and Avland entered into an agreement that would indemnify Avland for damage done to surrounding property. This agreement was entered into in 1969, prior to the sale of the recreational lots. This indicates to us that Avland intended to develop recreational properties regardless of the damage to surrounding property, as long as Avland was indemnified from loss. Therefore it appears that Avland was not lulled into doing what it would not have done had the plaintiffs taken action to prevent the development. We know of no rule which permits a party to know that what he is doing is harmful to his neighbor and to permit him to continue doing so despite his neighbor's complaint.

The fourth point raised on appeal is that the trial court erred in denying Avland leave to amend its answer by the addition of the affirmative defense of laches. Defendant cites section 46(3) of the Civil Practice Act

(Ill. Rev. Stat. 1975, ch. 110, par. 46(3)) in support of this argument. That section provides:

> "A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs * * *."

The defendant argues that this section is to be liberally interpreted. We agree with that contention, however, we find that section 46(3) is inapplicable here because the defense of laches was not proved.

The fifth point raised is that the trial court erred in admitting into evidence various pleadings from a pending action between the defendant in the instant case and Ben Knapp. In particular the pleading in controversy was a motion made by the defendant Avland to open a judgment by confession. The motion was supported by an affidavit of Curtis Fitzpatrick, an officer of Avland, in which he indicated that the lake was leaking; a fact in dispute in this lawsuit. The affidavit made reference to various attached supporting documents. Those documents were admitted into evidence as part of the motion.

■■ It has been our understanding that admissions made by an officer of a corporation in the exercise of his duties are binding upon that corporation. (*Hoke v. Harrisburg Hospital, Inc.* (1935), 281 Ill. App. 247.) We find no denial of official capacity in the record.

More important to us, however, is our inability to understand how a party to one lawsuit could swear to the untruth of a matter and then become party to another lawsuit and swear to the truth of the same matter. That would create a situation which we are unable to tolerate.

For the reasons stated above, the judgment of the Circuit Court of Tazewell County is affirmed.

Judgment affirmed.

STOUDER, P. J., and STENGEL, J., concur.