The People of the State of Illinois ex rel. William T. McCoy, Appellant, v. James B. McCahey et al., Appellees.

Gen. No. 39,879.

311

Opinion filed June 29, 1938.

TOLMAN, CHANDLER & DICKINSON and BELL, BOYD & MARSHALL, both of Chicago, for appellant; HENRY P. CHANDLER and THOMAS L. MARSHALL, of counsel.

RICHARD S. FOLSOM, of Chicago, for appellees; FRANK S. RIGHEIMER, RALPH W. CONDEE, FRANK R. SCHNEBERGER and H. MEYER SIMBORG, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.
This is an appeal from an order of the superior court of Cook county, striking petitioner's petition for writ of mandamus. The original petition was filed on June 2, 1937, an amended petition upon which the

hearing was had, was filed on September 11, 1937, and the order dismissing the petition was entered October 4, 1937.

By the petition as amended, William T. McCoy seeks to be reinstated and restored to his position as principal of the Bowen High School in the city of Chicago, and to the salary of such position, and that he be paid certain amounts of salary as principal of the Bowen High School, alleged to be due him since March 9, 1937. He alleges that he was appointed principal of the Bowen High School on August 26, 1931, and acted in that capacity until March 9, 1937, upon which latter date he was removed from the position as principal of the Bowen High School without a hearing, and on that date made principal of the Beidler Elementary School, and that since March 9, 1937, he has received the salary as principal of the Beidler Elementary School.

It is the claim of petitioner that as principal of the Bowen High School, he had acquired a permanent tenure in that position, from which he was subject to be removed only for cause and after a hearing; that the purported transfer to the Beidler Elementary School, which is a lower position, was in effect a removal from his position as high school principal, and being made without stated cause and without a hearing, was contrary to the statute and illegal. Defendant's theory is that there is no such position in the Chicago School system as a high school principal; that there is a position as principal, applicable without distinction to high schools and elementary schools, between which transfers of principals may be made by the superintendent of schools with the approval of the board of education at will; that the position held by the plaintiff was the position of principal only, and consequently that his shift from principal of a high school to principal of an elementary school was not

a removal. The defendants also urge that the plaintiff is barred from relief by laches.

On the question as to whether or not petitioner has been guilty of laches in not asserting his rights sooner, and in accepting his salary in the elementary school and apparently acquiescing in the transfer to that school, he cites the case of *Funkhouser v. Coffin,* 301 Ill. 257, as authority for the proposition that the Supreme Court has arbitrarily fixed a period of at least six months after removal of a civil service officer or employee within which action for reinstatement may be instituted. In that case, the petition was filed to review the finding of the civil service commission by certiorari. We do not agree with counsel that the Supreme Court has there, or anywhere asserted, or intended to assert, any such rule, and we are of the opinion that where the relief sought by a civil service employee is by writ of mandamus, as is the case here, the circumstances in each case must determine the question as to whether or not there has been delay in instituting the proceeding.

We will take judicial notice of the fact that at the time petitioner was transferred from the Bowen High School to the Beidler Elementary School, the Chicago public schools were in session, and the record indicates that upon the transfer of petitioner, another principal was appointed to the Bowen High School, and that such principal served and received the salary allotted to such position. Petitioner acquiesced in the transfer and received the salary as principal of the elementary school, from March 9, 1937, to May 22, 1937, before he made any protest. On the latter date, he notified the president of the board of education of the city of Chicago that he protested against his removal from the position he had held for more than five and one half years as principal of the Bowen High School, and against the reduction in his salary, but he made

no effort to enforce any claimed rights until the original petition for mandamus was filed on June 2, 1937, which was apparently insufficient, and the amended petition was not filed, as hereinbefore stated, until September 11, 1937. The order dismissing his petition was entered October 4, 1937, about seven months after the transfer was made.

In *Kenncally v. City of Chicago*, 220 Ill. 485, a petition for mandamus was filed in the circuit court of Cook county against the city of Chicago by one James Kenneally, a civil service employee, seeking his reinstatement as policeman, upon the theory that he had been wrongfully omitted and excluded from the payroll of the police department of the city of Chicago, since March 14, 1898. Because of laches, the Supreme Court, on appeal, held that he was not entitled to the writ, and while in that case there was a longer delay before the petition for mandamus was filed, than in the instant case, the statement of the Supreme Court bears directly upon the question of plaintiff's right to relief here. The Supreme Court there said:

"In addition to what has been said, it is clear that the appellant has been guilty of *laches* in not sooner presenting his application for restoration to the position, which he claims. 'The granting of the writ of *mandamus* is discretionary with the court in view of all the existing facts, and with due regard to the consequences which may result.' (*People v. Ketchum,* 72 Ill. 212; *People v. Board of Supervisors of Adams County,* 185 id. 288). In *People ex rel. v. Board of Supervisors,* 185 Ill. 288, we said (p. 293): 'Courts, in granting or refusing writs of mandamus, exercise judicial discretion, and are governed by what seems necessary and proper to be done in the particular instance for the attainment of justice. Courts, in the exercise of wise, judicial discretion, may, in view of

the consequences attendant upon the issuing of a writ of mandamus, refuse the writ, though the petitioner has a clear legal right for which *mandamus* is an appropriate remedy.' It has been said that 'the writ is not granted as a matter of absolute right, and where it can be seen that it cannot accomplish any good purpose, or that it will fail to have a beneficial effect, it will be denied.' (*Cristman v. Peck,* 90 Ill. 150; *People v. Lieb,* 85 id. 484; *Illinois Watch Case Co. v. Pearson,* 140 id. 423). It has also been held that the writ of *mandamus,* being a discretionary writ, will only issue in a case where it appears by law that it ought to issue, and the court will not order it in doubtful cases. (*Commissioners of Highways v. People,* 4 Ill. App. 391.) In *People ex rel. v. Davis,* 93 Ill. 133, we said: 'The court exercises a discretion in granting or refusing the writ, and, if the right be doubtful, it will be refused.' It has been held that the writ will be refused where the granting of it will disarrange the public service. (*People. ex rel. v Palmer,* 38 N. Y. Supp. 652). In *People ex rel. v. Collis,* 39 N. Y. Supp. 698, it was said: 'Without considering or determining the other questions raised upon this appeal, it seems to us the order appealed from should not have been made by reason of the delay and laches on the part of the relator in demanding reinstatement in the office, from which he had been discharged, and in applying for a mandamus to compel such reinstatement. . . . It is manifestly unfair, where there is disagreement as to the propriety or legality of the discharge, that the relator should lie still, and allow another person to occupy the position from which he has been removed, and draw pay for his services therein, and, *after more than four months has elapsed,* that he should be allowed to have this remedy by *mandamus* to be reinstated in office, and recover compensation for

services therein, which he has not performed, and which he has for a long time, without objection, permitted another person to perform, and be paid for.' This language is precisely applicable to the case at bar.'' (Italics ours.) Under the rule as here stated by the Supreme Court, we conclude that petitioner was guilty of laches.

Section 186, ch. 122, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 100.661] provides that:

''No *teacher or principal* who has been or shall be appointed by said board of education shall (after serving the probationary period of three years specified in Section 138 of this act) be removed except for cause, and then only by a vote of not less than a majority of all members of the board, upon written charges presented by the superintendent of schools, to be heard by the board, or a duly authorized committee of the same, after thirty days' notice, with copy of the charges, is served upon the person against whom they are preferred, who shall have the privilege of being present, together with counsel, offering evidence and making defense thereto.'' (Italics ours.)

Section 161, ch. 122, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 123.180] entitled ''Schools,'' is as follows:

''A board of three examiners is hereby constituted, whose duty it shall be to examine all applicants who are required to hold°certificates to teach and the board of education shall issue gratuitously to those who pass a required test of character, scholarship and general fitness, such certificates to teach as they are found entitled to receive. Such board of examiners shall consist of the superintendent of schools together with two persons approved and appointed by the board of education upon the nomination of the superintendent of schools. The board of examiners shall hold such examinations as the board of education may prescribe, upon the recommendation of the superintendent of

schools and shall prepare all necessary eligible lists, which shall be kept in the office of the superintendent of schools and be open to public inspection. Members of said board of examiners shall hold office for a term of two years. Appointments and promotions of teachers, principals and other educational employees shall be made for merit only, and after satisfactory service for a probationary period of three years, (during which period the board may dismiss or discharge any such probationary employee upon the recommendation, accompanied by the written reasons therefor, of the superintendent of schools), appointments of teachers and principals shall become permanent, subject to termination by compulsory retirement at the age of sixty-five years, and subject to the rules of the board concerning conduct and efficiency, and subject to removal for cause in the manner provided by section 161 of this Act: 1 Provided, however, that in determining the duration of the probationary period of employment in this section specified, there shall be included the time of past service of all teachers and principals and other educational employees who are in the schools at the time, or who have been therein within five years immediately preceding the time this Act goes into effect: And further provided, that when any teacher or principal, who has been promoted to the position of assistant, or district superintendent or a member of the board of examiners, is relieved of the duties of such position, such person shall be reinstated in the position from which he was promoted. The words 'teachers and principals' shall be construed to include all members of the teaching force except the superintendent of schools, assistant and district superintendents and members of the board of examiners. [As amended by Act filed July 11, 1935. L. 1935, p. 1937.]''

On December 9, 1925, the board of education of the city of Chicago adopted certain rules, which, as stated

in the case of *Armstrong v. City of Chicago*, 247 Ill. App. 584, were known as the "Emeritus" rules, wherein it was recited, among other things, that "hereafter no member of the teaching force shall be continued in class room or supervisory duties who shall be more than seventy years of age." By appropriate proceeding, two high school principals, together with certain other principals and teachers sought to enjoin the enforcement of these rules, and to cause the restoration of the complainants to positions from which they had been removed. The trial court denied the relief sought, and on appeal this court held that the board of education of the city of Chicago may pass reasonable rules as to the personal conduct and efficiency of principals, teachers, etc., and the permanency of the tenure of such employees would be subject to such rules and that they could be retired or removed for violation thereof after preferment of charges and hearing had, but that the board may not retire and in effect remove all the principals or other employees of a class solely on the ground that each individual in that class because of reaching a certain age would be presumed to be inefficient, without preferring charges or affording a hearing. In that case, cited by petitioner in the instant case, as sustaining his contention here, the order of this court reversed and remanded the cause with the direction that the trial court enter a decree directing the board of education to restore complainants to their respective positions as *principals and teachers* in the Chicago public schools as of the date of their retirement or removal therefrom. It will be noted that there was no direction that the two high school principals be returned to any position other than "principal."

As stated, defendant contends that there are no different grades of principals of schools, and that there

is no such position in the public schools of Chicago as "Principal of Bowen High School or high school principals." Section 130, ch. 122, par. 153, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 123.165], entitled "Schools," provides that "Appointments, promotions and transfers of teachers, principals, assistant and district superintendents and all other employees in the teaching force, shall be made . . . by the board of education, only upon the recommendation of the superintendent of schools, unless it be by a two-thirds vote of all the members of the board." It is insisted by defendant that the word "principals" in this statute means principals of both elementary and high schools.

Attached to petitioner's petition is an exhibit entitled, "Rules of the Board of Education of the City of Chicago." Section 2 of article 1 of this document is as follows:

"Sec. 2 (Composition of Education Department.) The Education Department shall include the Assistant Superintendents, the Special Assistant to the Superintendent, the District Superintendents, Directors, Supervisors, Board of Examiners, Superintendent of Parental School, Superintendent of Chicago and Cook County School for Boys, Presidents of Colleges, principals of schools, special teachers, teachers, and employes working under the general direction of the Superintendent of Schools. All such persons shall be elected or appointed subject to the rules of the Board of Education, which are now or hereafter may be in force, and also subject to the provisions of the Statutes of the State of Illinois."

Section 1 of article 3 of this document entitled, "Principals and Teachers," is as follows:

"Sec. 1. Principals of schools are the responsible administrative heads of their respective schools, and

are charged with the organization, supervision and administration thereof. They shall establish and enforce such regulations, not contrary to the rules of the Board of Education or the regulations of the Superintendent as may in their judgment be necessary for the successful conduct of their schools."

Section 2 of article 5 of this document is as follows:

"(Assignments). All assignments of teachers and principals shall be made by the Superintendent from the eligible lists."

Sections 1 and 3 of article 8 of this document, entitled "Certificates," are as follows:

"Sec. 1. Certificates for various positions on the teaching force shall be issued to persons who may become entitled thereto as a result of examinations conducted with special reference to such positions, under the authority of the Board of Education. . . ."

"Sec. 3. No person shall be appointed to any position in the teaching force without the appropriate certificate therefor, issued in accordance with Section 1 of this article, *nor shall any person be advanced to a higher position than that specified in the certificate without additional examination and proper certificate for such advanced position.*" (Italics ours.)

Section 7 of said article 8 is as follows:

"There shall be at least two groups for the classification of all teachers and elementary principals corresponding to their various salary schedules. Promotion from the lower to the upper group shall be by examination or college credits approved by the Board of Examiners, the requirements for which shall be uniform within each class of certificate."

Petitioner, however, insists that "the position of high school principal is a distinct position in the Chicago school system, different from and *superior to* that of elementary school principal," [italics ours] and cites as authority what is termed a "circular of

information," issued by the board of education of the city of Chicago, dated August, 1936, which contains the following:

"Promotions affecting the salary rating. Grouping of principal and teachers. There shall be two groups of principals; of teachers in high schools; of teachers in elementary schools. The groups shall have different salary schedules. Promotion from lower to upper group, upon fulfilling the requirements, shall be by vote of the Board of Education, upon recommendation of the Superintendent."

"Condensed salary schedule now in force. This salary schedule is subject to change during the school year 1936–37. (Promotion from lower to high group is obtained by examination or by five college credits).

### "Elementary Grades.

| | | |
|---|---|---:|
| Lower Group | (First year | $1,500 |
| | (Fifth year | 2,000 |
| Upper Group | (First year | 2,125 |
| | (Fourth year | 2,500 |

(Increase $125 per year)

### Principals of Elementary Schools.

| | | |
|---|---|---:|
| Lower Group | (First year | $3,000 |
| | (Fifth year | 3,800 |
| Upper Group | (First year | 4,000 |
| | (Fifth year | 4,800 |

(Increase $200 per year)

### Teachers in High Schools Limited Certificate.

| | | |
|---|---|---:|
| First Group | (First year | $1,800 |
| | (Fifth year | 2,550 |
| Second Group | (First year | 2,700 |
| | (Fifth year | 3,300 |
| Third Group | (First year | 3,400 |
| | (Fifth year | 3,800 |

### General Certificate (All Subjects)

Lower Group (First year....................$2,000
             (Fifth year....................  2,800
Upper Group (First year....................  3,000
             (Fifth year....................  3,800
(Increase $200 per year)

### Principals of High Schools.

First year.................................$4,300
Eighth year...............................  5,700
(Increase $200 per year)

"Substitutes are paid $6.00 per day in Elementary Schools and $7.50 per day in High Schools.

"Note—All figures quoted above are subject to approximately 25 per cent reduction for the year 1936–1937."

"Superior" is defined by Standard Dictionary as, "belonging to a higher grade."

We gather from petitioner's brief that the principal ground given by the trial court for the dismissal of the petition was that, presuming that the contention of petitioner is correct, in that the position of high school principal is a higher position than elementary school principal, it then follows, as a matter of course, that under the rules of the board of education, before he could be advanced from the position of elementary to high school principal, an examination was required, which was not required of petitioner. Petitioner here strenuously insists that no such examination was required, and in this we believe he is inconsistent. If his transfer from elementary principal to high school principal was "to a higher position" without examination, then it was in direct violation of sections 1 and 3 of article 8 of the rules of the board of education of the city of Chicago, hereinbefore set forth. Standard Dictionary defines "tenure" as "the fact, manner, or means of holding possession or control of that

which is one's own; a holding; as tenure of lands, tenure of office." Petitioner could not acquire a permanent tenure to a position to which he was wrongfully appointed. However, we are of the opinion that the title "principal," as used in the rules, applies equally to elementary and high schools, and that no examination was required for petitioner's transfer, and we conclude that under and in conformity with its rules and the statute, the board of education may transfer a "principal" from the elementary schools to the high schools, or from the high schools to the elementary schools, as the best interest of the respective schools may require. We can arrive at no other conclusion than that the trial court was not in error in dismissing the petition. Therefore, the judgment of the superior court of Cook county is affirmed.

*Affirmed.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.